CHIEF JUSTICE GRAY,
concurring in part and dissenting in part.
¶49 I concur in the Court’s opinion on issue one, but respectfully *245 dissent from that opinion on issue two. I would reverse the District Court’s admission of Dailey’s testimony and remand.
¶50 The record reflects that Dailey is a licensed clinical social worker. She first was designated an expert in the area of child sexual abuse over defense objections. Dailey later was designated as an expert in the area of “religiously controlling organizations, groups[,]” also over defense objections.
¶51 Dailey’s substantive testimony began with her personal experiences in a “Christian sect” nearly 20 years previously and her treatment of people who have “come out of very rigid religious groups.” It went on to discuss “principles of religious groups” and related “rigid controlling beliefs” in the context of information she reviewed relating to Sandrock’s family. It is true that Dailey did not describe Sandrock as a cult leader or state that he had formed a cult; she did testify, however, about “cult” leadership and relationships. In any event, the fact that-as the Court puts it-Dailey “merely provided the jury a context for them to understand the intricacies of ‘religious groups’ in general” does not lead logically or legally to the Court’s conclusion that the testimony was relevant.
¶52 Relevant evidence is “evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.” Rule 401, M.R.Evid. “Evidence which is not relevant is not admissible.” Rule 402, M.R.Evid.
¶53 Sandrock was charged with three counts of sexual intercourse without consent, twelve counts of incest, and two counts of tampering with a witness. The “facts of consequence” in this action were those necessary for the State to prove the elements of the offenses charged. Those facts were presented through witness testimony and documentary exhibits. Indeed, the record reflects that Sandrock did “not in any way contest[] the fact that both [victims] were sexually abused.” Thus, Dailey’s testimony was totally irrelevant. There simply was no fact “of consequence to the determination of the action” at issue in this case, as required for relevance in Rule 401, with regard to the “intricacies of‘religious groups’ in general.” Consequently, I conclude that the District Court abused its discretion in admitting Dailey’s irrelevant testimony.
¶54 Nor could it seriously be argued that Dailey’s testimony-which covers in excess of 40 transcript pages-was not highly prejudicial to Sandrock. Notwithstanding the care taken by the State not to elicit opinions from Dailey that Sandrock was a cult leader or had formed a *246 cult, she was permitted to testify about cults, cult leadership and cult relationships. No rational jury could have missed the (barely) implicit suggestion by the State via Dailey’s testimony that Sandrock was just that-a cult leader. And, indeed, the prosecutor made effective-if indirect-use of the testimony in his closing argument to the jury in the guise of commenting on Sandrock’s mental disease or defect defense, as follows:
Charles Manson believed he could start a race war by killing a few affluent whites and making it look like it was done by hateful blacks, and the group would rule the world.
Jim Jones made a nice following by making his victims believe he was God. Under his leadership, they performed 100 sexual acts in front of each other. He made them believe the leader should have sex with so many of his congregation, and yet followed him down to Guyana where they drank poisoned Kool-Aid and killed themselves with their children.
No testimony from any witness other than Dailey could have supported these kinds of arguments. And what juror who remembers, as I do, the horrors and consequences of those cult leaders, having heard Dailey’s testimony, could have done other than conclude that Sandrock was in fact a cult leader and fail to even consider the evidence supporting Sandrock’s mental disease or defect defense from one of the leading experts in Montana?
¶55 It is my view that the State sought to present Dailey’s irrelevant testimony for these very reasons, namely, to poison the jury against Sandrock’s defense and the expert testimony which supported it long before the defense had an opportunity to put on its case. While one cannot, of course, say with certainty that this strategy resulted in the jury rejecting Sandrock’s defense, I believe one can say that the admission of Dailey’s irrelevant testimony was substantially prejudicial to Sandrock.
¶56 I would reverse the District Court’s admission of Dailey’s testimony and remand for a new trial. I dissent from the Court’s failure to do so.
JUSTICE LEAPHART joins in the foregoing concurring and dissenting opinion.